UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL MING YU CHAU,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., in its individual capacity and as trustee for the RFMSI 2003S19, et al.,<br><br>　　　　　　　　　　Defendant. | Case No.: 18-CV-1536-CAB-WVG<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS AND DECLINING SUPPLEMENTAL JURISDICTION OVER STATE LAW CLAIMS**<br><br>[Doc. Nos. 12, 13] |

This matter is before the Court on the motion to dismiss filed by Defendant Wilmington Savings Fund Society, FSB ("Wilmington"). The motion has been fully briefed, and the Court deems it suitable for submission without oral argument. For the following reasons, the Court finds that Plaintiff lacks standing to pursue his claims individually, which is how he has pled them. Further, even if Plaintiff has standing, the Court lacks subject matter jurisdiction based on diversity, Wilmington's motion is granted with respect to the sole federal claim, and the Court declines supplemental jurisdiction over the remaining state law claims.

1

## I. Background

This lawsuit is Plaintiff's latest effort to stave off foreclosure of a property owned by Plaintiff in San Diego, California (the "Property"). Plaintiff acquired the Property in 2000 and refinanced the loan on the Property in 2003 with Homecomings Financial Network, Inc., which the complaint also refers to as GMAC Homecomings Financial Network, Inc., and is not a party to this case. [Doc. No. 1 at ¶¶ 14-15; Doc. No. 1-2 at 3.] The Deed of Trust on the loan was assigned to Defendant The Bank of New York Mellon Trust Company, National Association ("BONY") in 2011. [Doc. No. 1 at ¶ 18; Doc. No. 1-2 at 29.] A corrective assignment was executed on February 1, 2017, and recorded on February 27, 2017, to correct the assignee verbiage in the 2011 assignment document. [Doc. No. 1-2 at 42-43.] On June 14, 2016, BONY assigned the Deed of Trust for the Property to Defendant U.S. Bank, N.A. ("USB"). [Doc. No. 1-2 at 39-40.] On February 3, 2017, USB assigned the Deed of Trust to Wilmington. [Doc. No. 1-2 at 45-46.]

The complaint alleges and attaches three notices of default ("NODs") that were recorded on the Property between April 23, 2010 and September 21, 2017. [Doc. No. 1 at ¶¶ 17, 19, 25; Doc. No. 1-2 at 26-27, 31-33, 50-52.] The first two NODs have since been rescinded. [Doc. No. 1 at ¶¶ 20, 24; Doc. No. 1-2 at 37-38, 48.] On February 20, 2018, Defendant Clear Recon Corporation ("Clear Recon") caused to be recorded a Notice of Trustee's Sale of the Property setting a sale date of March 26, 2018. [Doc. No. 1 at ¶ 26; Doc. No. 1-2 at 57-58.] On March 26, 2018, Plaintiff initiated a bankruptcy case under Chapter 13 of the United States Bankruptcy Code. [Doc. No. 1 at ¶ 44; Doc. No. 1-2 at 82.] As a result of Plaintiff's bankruptcy filing, the foreclosure sale date was postponed to July 9, 2018. [Doc. No. 1 at ¶ 64.] Plaintiff's bankruptcy petition was dismissed on June 26, 2018, and he filed a new Chapter 13 bankruptcy petition on July 9, 2018. [Doc. No. 12-3 at 171-72, 177.][1] In this still pending bankruptcy proceeding, the trustee has objected

---

[1] With its motion, Wilmington requested judicial notice of certain documents in the record for Plaintiff's bankruptcy filings. Plaintiff did not oppose this request, and the Court finds it appropriate to take judicial

to confirmation of the Chapter 13 plan and moved to dismiss the petition on the grounds that the proposed plan is not made in good faith. The trustee's motion is currently set for hearing on October 23, 2018. [Doc. Nos. 42, 43 in Bankr. S.D. Cal. Case No. 18-4085-MM13.]

On July 6, 2018, Plaintiff initiated the instant lawsuit with a verified complaint and motion for temporary restraining order ("TRO"). [Doc. Nos. 1, 3.] The complaint asserts eight claims under California state law, and one claim (the Ninth Cause of Action) with the heading "Violation of Equal Credit Opportunity Act (15 U.S.C. §§ 1691-1691f) California Code of Civil Procedure § 1060." [Doc. No. 1 at p. 28.] It names five defendants: (1) BONY, in its individual capacity and as trustee for the RFMSI 2003S19 and as trustee for Residential Funding Mortgage Securities I, Inc., Mortgage Pass Through Certificates Series 2003-S19; (2) USB, as trustee for NRZ Pass-Through Trust V; (3) Wilmington d/b/a Christiana Trust, as trustee for Pretium Mortgage Acquisition Trust; (4) Western Progressive, LLC; and (5) Clear Recon.

In his motion for a temporary restraining order, Plaintiff sought to enjoin foreclosure on the Property, including the trustee sale scheduled for July 9, 2018. [Doc. No. 3.] On July 11, 2018, Plaintiff filed a notice that the foreclosure sale was rescheduled to July 23, 2018. [Doc. No. 4.] The Court then entered an order stating that the Court would not take action on the motion until Plaintiff served the complaint and TRO motion on Defendants. [Doc. No. 5.] On August 15, 2018, Plaintiff filed proofs of service and a declaration from his counsel that all Defendants had been served. [Doc. Nos. 6-11.] The declaration also stated that the trustee's sale date had been postponed to August 27, 2018. [Doc. No. 11.] On August 24, 2018, the Court held a hearing during which it denied Plaintiff's motion for

---

notice of such documents. Accordingly, Wilmington's request is granted. *See generally Cobb v. Aurora Loan Servs., LLC*, 408 B.R. 351, 353-54 (E.D. Cal. 2009) (considering plaintiff's bankruptcy petition in deciding motion to dismiss).

a TRO. [Doc. No. 21.] The record is silent as to whether the trustee's sale went forward on August 27, 2018.

While the motion for a TRO was pending, Wilmington filed the instant motion to dismiss as well as a motion to strike Plaintiff's request for punitive damages.

**II.     Standing**

At the TRO hearing, the Court raised the question of whether Plaintiff has standing to pursue his claims in light of his prior and pending bankruptcy petitions. In his opposition brief, Plaintiff relies on *Linares v. CitiMortgage, Inc.*, No. C-14-3435 EMC, 2015 WL 2088705 (N.D. Cal. May 5, 2015), a case where the plaintiffs argued that the statute of limitations for their claims was tolled during their Chapter 13 bankruptcy proceedings because they could not file suit while the bankruptcy was pending. The district court disagreed, holding that there is no statutory prohibition to filing a lawsuit based on Chapter 13 bankruptcy that tolls the statute of limitations period. *Id.* at *6. The district court reasoned:

> Title 11 U.S.C. § 1306(b) provides: "Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate." 11 U.S.C. § 1306(b). In *In re DiSalvo*, 219 F.3d 1035 (9th Cir. 2000), the Ninth Circuit affirmed the continuing role of a debtor in Chapter 13 proceedings:
>
>> In Chapter 7 liquidation proceedings, only the trustee has standing to prosecute or defend a claim belonging to the estate. The same cannot be said for trustees under the reorganization chapters. In those regimes, the debtor has express authority to sue and be sued. Bankruptcy Rule 6009, which applies to Chapters 7, 11, and 13, directs that "with or without court approval, the trustee or debtor in possession may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal." Fed. R. Bankr.P. 6009 (emphasis added). The Chapter 13 debtor has been considered analogous to Chapter 11, which grants the debtor full authority as representative of the estate typical of a trustee. See 11 U.S.C. § 1107.

*Id.* at *5-6 (quoting *In Re DeSalvo*, 219 F.3d at 1039) (internal quotation marks and brackets omitted). The above language from *Linares* and *DeSalvo*, however, only stands for the proposition that a debtor in possession may prosecute any action *on behalf of the bankruptcy estate*. Plaintiff, however, pursues his claims in this case individually, and not on behalf of his bankruptcy estate. Although the complaint references the first of his two recent Chapter 13 bankruptcy filings, it does not allege or argue that Plaintiff is prosecuting this action on behalf of his bankruptcy estate. Further, there does not appear to be any explicit disclosure of the existence of this lawsuit or of the claims asserted herein in either of the recent Chapter 13 proceedings. This lawsuit is not referenced the schedules submitted in the currently pending proceedings, and Plaintiff's Chapter 13 Plan only states: "As to those creditors having claims on my home located on Treyburn Way, I am going to litigate that issue as an adversary proceeding as they have no standing and do not own any secured or unsecured lien on my home." [Doc. No. 28 at 12 in Bankr. S.D. Cal. Case No. 18-4085-MM13.] This representation, stated in the future tense, implies that this lawsuit is not already pending. In sum, Plaintiff cannot claim to be bringing his claims for the benefit of his bankruptcy estate when he has not even disclosed this lawsuit in his bankruptcy proceedings. *See King v. Indiana Harbor Belt R.R. Co.*, No. 2:15-CV-245 JD, 2018 WL 1566821, at *3 (N.D. Ind. Mar. 30, 2018) ("A Chapter 13 debtor . . . has standing to bring a claim in his own name for the benefit of the bankruptcy estate, but not for his own personal benefit. Where, as here, a Chapter 13 debtor has not disclosed legal claims in his bankruptcy proceeding, he cannot claim to be bringing them for the benefit of his estate.") (internal citation omitted); *see also Cable v. Ivy Tech State Coll.*, 200 F.3d 467, 472-73 (7th Cir. 1999) ("Under the reorganization chapters, the debtor-in-possession steps into the role of trustee and exercises concurrent authority to sue and be sued on behalf of the estate.").

Because Plaintiff brings his claims individually and not on behalf of his Chapter 13 bankruptcy estate, he lacks standing. Nevertheless, because Plaintiff may be able to remedy this defect through amendment in this case and disclosure of his claims in his

bankruptcy action, the Court addresses other jurisdictional defects and the merits of Wilmington's motion to dismiss below.

### III. Subject Matter Jurisdiction

The complaint alleges that this Court has subject matter jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction). "For a federal court to exercise diversity jurisdiction under § 1332(a), the amount in controversy must exceed $75,000, and the parties must be citizens of different states." *Rainero v. Archon Corp.*, 844 F.3d 832, 839 (9th Cir. 2016). The complaint, however, alleges that Plaintiff resides in San Diego [Doc. No. 1 at ¶ 1], and that Defendant Clear Recon has its headquarters in San Diego. [*Id.* at ¶ 8.] Thus, both Plaintiff[2] and at least one defendant[3] are citizens of California. This lack of diversity between Plaintiff and Clear Recon means that this Court does not have subject matter jurisdiction under 28 U.S.C. § 1332. *See Lopez v. Nationstar Mortg. LLC*, No. CV-15-03288-MWF (AJWx), 2015 WL 6478263 (C.D. Cal. Oct. 26, 2015) (holding that presence of Clear Recon as defendant defeated diversity jurisdiction when Plaintiff alleged that his primary residence was in California).

Notwithstanding the foregoing, the presence of Plaintiff's putative claim for violation of the Equal Credit Opportunity Act ("ECOA") makes it possible that Plaintiff could amend the complaint to allege federal question subject matter jurisdiction over that claim under 28 U.S.C. § 1331, and supplemental subject matter jurisdiction over the state

---

[2] Although residence alone does not necessarily establish citizenship for the purposes of diversity jurisdiction, in light of Plaintiff's multiple bankruptcy filings in this district and the absence of evidence that Plaintiff is a citizen of another state, the Court assumes that Plaintiff is a citizen of California.

[3] The complaint also does not allege the citizenship of Defendant Western Progressive, LLC ("Western"). For the purposes of diversity jurisdiction, limited liability companies are "a citizen of every state of which [their] owners/members are citizens." *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). The complaint does not allege the citizenship of Western's owners or members. Accordingly, Plaintiff has not satisfied his burden to demonstrate diversity jurisdiction for this reason as well. *See Linthicum v. Ocwen Loan Servicing, LLC,* No. 1:15-CV-01120-AWI, 2015 WL 4477963, at *2 (E.D. Cal. July 21, 2015) (remanding complaint because removing defendant had not established the citizenship of Western); *Smith v. Ocwen Loan Servicing, LLC,* No. ED CV 14-2208 PA KKX, 2014 WL 8480452, at *3 (C.D. Cal. Oct. 29, 2014) (same).

law claims under 28 U.S.C. § 1367. Accordingly, the Court will consider the pending motion to dismiss with the understanding that subject matter jurisdiction exists on the basis of the existence of a federal question, and not on the basis of diversity as alleged in the complaint.

### IV. Claim for Violation of Equal Credit Opportunity Act

#### A. Legal Standards on Motions to Dismiss

Wilmington moves for dismissal of the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). On the other hand, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks omitted).

#### B. Discussion

Because the ECOA claim is the linchpin to subject matter jurisdiction, the Court addresses this claim first. The ECOA "makes it illegal 'for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction ... on the basis of race, color, religion, national origin, sex or marital status, or age.'" *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1210 (9th Cir. 2013) (quoting 15 U.S.C. § 1691(a)(1)). To state a claim for discrimination under ECOA, "a plaintiff must allege that: (1) she is a member of a protected class; (2) she applied for credit with defendants; (3) she qualified for credit;

and (4) she was denied credit despite being qualified." *Harvey v. Bank of Am., N.A.*, 906 F. Supp. 2d 982, 990-91 (N.D. Cal. 2012) (citations and internal quotation marks omitted).

In addition, "[w]hen a creditor takes an adverse action against an applicant without giving the required notice, the applicant may sue for a violation of ECOA." *Schlegel*, 720 F.3d at 1210 (citing 15 U.S.C. § 1691e). As "adverse action" under the ECOA is a:

> denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested. Such term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit.

*Id.* (quoting 15 U.S.C. § 1691(d)(6). Individual claims under the ECOA are subject to a five year statute of limitations. 15 U.S.C. § 1691e(f).

The complaint contains the conclusory allegation that "Defendants have exhibited and practiced pervasive discrimination against Hispanic and African-American [sic] as evidenced by" a 2009 letter from the Federal Trade Commission ("FTC") regarding an investigation of Homecomings Financial. [Doc. No. 1 at ¶ 131; Doc. No. 1-2 at 23-24.] This FTC letter, however, makes no mention of Wilmington or any other Defendant. Moreover, the complaint does not make any allegations that Plaintiff is a member of a protective class who was denied credit despite being qualified. To the contrary, based on the allegations in the complaint, Plaintiff has been in default of his obligations under the Deed of Trust since at least 2010, indicating that Plaintiff was decidedly not qualified to receive any additional credit secured by the Property from Defendants. Further, considering that the FTC letter regarding Homecomings Financial was sent more than nine years before Plaintiff filed the complaint and that the default and foreclosure proceedings concerning the Property have been ongoing for almost as long, any claim Plaintiff could possibly assert under the ECOA is almost certainly time-barred. Finally, in addition to (and possibly because of) all the foregoing reasons, Plaintiff makes no argument in support of this claim in his opposition to the motion to dismiss, thereby waiving any argument as

to the adequacy of this claim. Accordingly, the claim for violation of the ECOA is dismissed.

## V. Supplemental Jurisdiction

Having dismissed Plaintiff's federal claim, the Court's "decision of whether to exercise supplemental jurisdiction over the remaining state law claims 'is purely discretionary.'" *Couture v. Wells Fargo Bank, N.A.*, No. 11-CV-1096-IEG (CAB), 2011 WL 3489955, at *2 (S.D. Cal. Aug. 9, 2011) (quoting *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009)); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988) ("We conclude that a district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate."); *Holt v. First Franklin Fin. Corp.*, No. C 10-5929 SBA, 2011 WL 4595195, *4 (N.D. Cal. Sept. 30, 2011) ("When the federal claims that served as the basis for jurisdiction are eliminated, either through dismissal by the court or by a plaintiff amending his or her complaint, federal courts may decline to assert supplemental jurisdiction over the remaining state law causes of action.") (citing 28 U.S.C. § 1367(c)(3)).

Here, because the Court is dismissing the sole federal claim at the outset of the litigation, it is more appropriate to decline supplemental jurisdiction over the state law claims. *See Carnegie-Mellon*, 484 U.S. at 350 (holding that "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice"); *see also Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) ("A district court 'may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction.'") (quoting 28 U.S.C. § 1367(c)(3)).

## VI. Leave to Amend

In his opposition, Plaintiff requests leave to amend to assert common law fraud and RICO claims. Although the fraud claim will not cause the Court to reconsider its decision to decline to exercise supplemental subject matter jurisdiction, a federal RICO claim could give the Court federal question subject matter jurisdiction and warrant exercise of

9

supplemental jurisdiction over the state law claims. Further, although the Court is skeptical that any ECOA claim could survive dismissal, it is not impossible that Plaintiff could actually allege enough to state such a claim. However, because Plaintiff seeks to add entirely new claims and because Plaintiff's opposition brief does not specify any additional facts that he could allege to state these claims or to remedy the other defects outlined herein, he must file a motion for leave to amend pursuant to Federal Rule of Civil Procedure 15 before amending his complaint. In addition to remedying defects in subject matter jurisdiction, any proposed amended complaint (which must be submitted with the motion for leave to amend), must also remedy the defects discussed above with respect to Plaintiff's standing. Specifically, it must contain allegations sufficient to demonstrate that Plaintiff brings this lawsuit on behalf of his bankruptcy estate and not as an individual.

## VII. Disposition

For the foregoing reasons, it is hereby **ORDERED** as follows:

1. Plaintiff lacks standing to prosecute the claims asserted in the complaint as an individual, which is how the complaint is pled;
2. The Court does not have subject matter jurisdiction based on diversity as alleged in the complaint;
3. Wilmington's motion to dismiss for failure to state a claim is **GRANTED** as to the ninth claim for violation of the Equal Credit Opportunity Act, which is the only federal claim asserted in the complaint;
4. Even assuming Plaintiff has standing, in light of the dismissal of the lone federal claim, the Court declines to exercise supplemental jurisdiction over his state law claims, so the motion to dismiss is **DENIED AS MOOT** with respect to the remaining claims;
5. Defendants' motion to strike is also **DENIED AS MOOT**; and,
6. The complaint is **DISMISSED** in its entirety without prejudice to refiling the state law claims in state court. If Plaintiff wants to file an amended complaint in this court that would remedy the jurisdictional defects discussed herein, he must

file a motion for leave to amend that attaches clean and redlined versions of the proposed amended complaint (*see* CivLR 15.1.b), on or before **October 11, 2018**. If Plaintiff does not file a motion for leave to amend by this deadline, the Clerk of Court shall **CLOSE THIS CASE** without further order from the Court.

It is **SO ORDERED**.

Dated: September 28, 2018

_____
Hon. Cathy Ann Bencivengo
United States District Judge